(No. 52555.—

FORREST R. CHANEY *et al.,* Appellees, v. THE CIVIL SERVICE COMMISSION *et al.,* Appellants.

*Opinion filed October 17, 1980.—Rehearing*
*denied November 26, 1980.*

290

UNDERWOOD, J., specially concurring.
WARD, J., dissenting.

William J. Scott, Attorney General, of Springfield (Myra Turner, Assistant Attorney General, of Chicago, of counsel), for appellants.

Robert G. Heckenkamp, of Heckenkamp & Simhauser, P.C., of Springfield, for appellees.

James P. Manak, of Glen Ellyn, Fred E. Inbau, of Chicago, and Wayne W. Schmidt, of South San Francisco, California (Richard J. Brzeczek and James B. Haddad, of Chicago, and James A. Murphy, of Peoria, of counsel), for *amici curiae* Americans For Effective Law Enforcement, and the Illinois Association of Chiefs of Police, Inc.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiffs, Forrest R. Chaney and David Imber, were discharged from their positions as agents of the Illinois

Bureau of Investigation (IBI) for refusing to obey an order of the IBI superintendent directing plaintiffs to return to the operation of a tavern in an undercover law-enforcement capacity. Plaintiffs filed grievances with the Civil Service Commission (Commission). A hearing officer for the Commission found that the discharges were warranted, and the Commission adopted that finding. On review, the circuit court of Sangamon County reversed the Commission's decision and ordered plaintiffs reinstated "with all appropriate benefits, including backpay subject to legal set-offs." Defendants, the Commission and the Department of Law Enforcement (Department), appealed. The appellate court affirmed, one justice dissenting. (74 Ill. App. 3d 424.) We granted the Commission and the Department leave to appeal. We affirm.

The events precipitating this litigation are recited in detail in the appellate court opinion and will be repeated here in a summarized form and only as is necessary to decide the question presented, whether plaintiffs' discharges are proper. In 1974, Federal and State officials developed the idea for an undercover law-enforcement plan whereby law-enforcement personnel would operate two businesses or "fronts" for the purpose of detecting criminal activity. A tavern was decided upon as one such front. Plaintiffs, as agents of the IBI, were chosen to operate it. They assumed the names Forrest Randall and David Scott, and they obtained various forms of identification in those names. Under their assumed names, they acted as incorporators of a company through which the tavern would be operated, they obtained a liquor license, they entered into a lease for the premises on which the tavern was located, and they opened a checking account with law-enforcement grant funds. In a letter from the United States Attorney, plaintiffs were assured that their actions in obtaining identification and opening a checking account under assumed names "will not be interpreted

by Federal authorities as acts undertaken with intent to deceive or defraud any of the various agencies of the State of Illinois." To a similar effect is a letter from an Illinois Assistant Attorney General, stating his opinion that plaintiffs' activities were lawful. Plaintiffs were also assured orally that the Illinois Attorney General and the Cook County State's Attorney had authorized the project.

After operating the tavern for two days, plaintiffs refused to participate further. They failed to open the tavern on the third day, and they told customers that tax problems necessitated the closing. They explained to their superiors at the IBI that they refused to continue the operation of the tavern because of a fear for their physical safety and their concern about the legality of the project.

Attempting to allay plaintiffs' fears of criminal or civil liability, three meetings were held at which plaintiffs were assured of the legality of the project by representatives of the IBI, the Illinois Attorney General, the Cook County State's Attorney, the Justice Department, the Internal Revenue Service, and the Bureau of Alcohol, Tobacco and Firearms. Plaintiffs persisted in their refusal to operate the tavern. The superintendent thereupon issued a formal order directing plaintiffs to return to the tavern and to continue operating it. Plaintiffs did not comply with the order, and they were charged with insubordination and subsequently discharged.

In holding that the discharges were improper, the circuit court noted that an IBI rule of conduct allows agents to refuse to comply with orders when compliance would require the commission of an illegal act, and the court ruled that the order directing plaintiffs to return to work was "an unlawful order to continue an unlawful course of conduct and that the agents had a right and duty to refuse to obey said unlawful order." The court reasoned that plaintiffs had committed perjury (Ill. Rev. Stat. 1975, ch.

38, par. 32—2) in obtaining a liquor license for their corpo-, ration by "swearing falsely under oath" and that the use of a liquor license obtained through perjury constituted a separate offense each day the license was used (Ill. Rev. Stat. 1975, ch. 43, par. 183). The circuit court did not indicate what it found to be a false statement on plaintiffs' application for a liquor license, but it seems to have been referring to plaintiffs' use of their assumed names.

In affirming the circuit court's judgment, the appellate court likewise noted that an IBI rule allowed agents to disregard orders requiring the commission of illegal acts. The court also agreed that plaintiffs committed perjury in applying for the liquor license and that each day's operation under the license constituted a separate offense. The appellate court also held that plaintiffs committed forgery (Ill. Rev. Stat. 1975, ch. 38, par. 17—3) in applying for a liquor license under their assumed names because the official who issued the license testified that he would not have done so if he had known the true facts; that plaintiffs committed perjury when they applied under oath for articles of incorporation; and that plaintiffs were in violation of provisions of the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 120(14)) and a local ordinance, which prohibit law-enforcement officials from being interested in the sale or distribution of liquor.

We hold that plaintiffs' use of their assumed names in obtaining a liquor license was improper under the facts of this case. The license was therefore not properly obtained, and plaintiffs were justified in refusing to operate the tavern thereunder.

By statute in Illinois, a person desirous of assuming another name "*may* file a petition in the circuit court of the county wherein he shall reside, praying for such relief ***." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 96, par. 1.) The record does not indicate that plaintiffs filed such a petition, and we assume that they refrained from

294

doing so either because they were unaware of the law or to maintain and insure the secrecy of the project. Notwithstanding plaintiffs' failure to follow this statutory procedure, their use of the names Forrest Randall and David Scott could, in certain circumstances, be recognized as a proper exercise of their common law right to assume a name. In *Reinken v. Reinken* (1933), 351 Ill. 409, 413, the court held that the statutory provisions governing the assumption of names "are merely permissive, and they do not abrogate the common law right of the individual to change his name without application to the courts." The court also stated, however, that an exercise of this common law right would be valid only if such action " 'does not interfere with the rights of others.' " (351 Ill. 409, 413; see also 65 C.J.S. *Names* sec. 11(1) (1966).) It is this limitation on the common law right to assume a name that leads us to conclude that plaintiffs' use of assumed names in obtaining a liquor license was improper, since the official who issued the license testified that he would not have done so if he had known who plaintiffs were. Without validly assumed names, the liquor license was not properly obtained, thereby placing plaintiffs' corporation in violation of article X, section 1, of the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 183) and the local ordinance. Under that section, each day of operation without a valid license would constitute a separate offense, and under the superintendent's order to return to the operation of the tavern, plaintiffs would be forced to participate in this continuing illegality. Under the rules of the IBI itself, plaintiffs were not required to do so. The promises of Federal and State prosecutors that plaintiffs' actions were lawful did not alone render plaintiffs' actions lawful; an illegality is not made legal because a prosecutor says so. Nothing short of a statutory exemption for undercover law-enforcement activities would, under the facts of this case, remove plaintiffs'

actions from the coverage of the prohibitions of the Dramshop Act.

Because of our disposition of the case, we have no cause to address other issues raised by the parties or discussed by the appellate court, and we express no opinion on the merits of those issues. We do not hold, as the appellate court did, that plaintiffs' use of their assumed names constituted perjury (Ill. Rev. Stat. 1975, ch. 38, par. 32—2). We hold only that the use of those names was improper in this case because of the resulting interference with the local liquor license authority.

For the reasons above stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, specially concurring:

The liquor license was apparently obtained under circumstances constituting noncompliance with both the governing statute (Ill. Rev. Stat. 1975, ch. 43, par. 183) and the local ordinance.

The rules of the Illinois Bureau of Investigation provide that agents may not be compelled to participate in unlawful activities. Solely because the rules so provide, I concur in the court's judgment.

MR. JUSTICE WARD, dissenting:

I consider that the majority's view, which completely overlooks legislative intent, is simplistic. If its reasoning and spirit are followed elsewhere, the efficient operation of law-enforcement agencies could be seriously impeded. That this is so can be seen from the fact that at this very time nationally publicized Federal prosecutions, in which resembling investigative techniques were revealed, have resulted in convictions of Federal legislators.

The majority ignores entirely the legislative intent, in holding that the liquor license was obtained here in viola-

tion of the Dramshop Act and of the local ordinance. The United States Attorney, the State's Attorney of Cook County, and the Attorney General of Illinois had no difficulty in perceiving that the intent underlying the statute and ordinance was to serve other legislative purposes and was not to thwart legitimate and necessarily imaginative activities of law-enforcement agencies.

Too, the plaintiffs, in September 1974, selected assumed names and began fashioning their cover stories. They opened the tavern on April 15, 1975, and closed the operation on April 17, saying that they were concerned about their physical safety and the legality of the project. I think objections on the ground of feared illegality come tardily under the circumstances. The dissenting judge in the appellate court observed: "Upon the actual issue, the record does not support a factual determination that the plaintiffs disobeyed because their acts were deemed illegal, but rather because they believed the operation ill-advised, hazardous and personally objectionable. In effect, they undertook to refuse their assignment for such reasons rather than for the reasons devised for purposes of the present action." 74 Ill. App. 3d 420, 435.

Considering all of the circumstances, I believe that the Department and the Commission properly considered the conduct insubordinate.