Richard Akbar SALAHUDDIN, Plaintiff,

v.

Thomas A. COUGHLIN, III, et al., Defendants.

No. 80 Civ. 7217 (RWS).

United States District Court, S.D. New York.

July 3, 1984.

Richard Akbar Salahuddin, pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Gerald Ryan, Charles R. Fraser, Hugh Weinberg, Asst. Attys. Gen., New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendants, who are present and former Commissioners of the New York State Department of Correctional Services ("Department") and officers of Green Haven ("Green Haven") and Ossining Correctional Facilities, have moved for summary judgment and vacation of the preliminary injunction issued by this court. Plaintiffs Richard Akbar Salahuddin ("Salahuddin"), Arthur (A–God) Blake ("Blake") and Gary (Zaid) Ashby ("Ashby") have moved to compel answers to interrogatories. For the reasons given below, defendants' motion is granted and the complaint is dismissed.

The complaint, discussed in detail below, alleges constitutional violations arising from conditions at Green Haven, where all three plaintiffs were inmates. None of the plaintiffs remain at Green Haven, however, since Blake and Ashby have been paroled and Salahuddin has been transferred to another state prison.

### Background

Salahuddin has been the lead plaintiff in this action, having signed most if not all of the plaintiffs' papers the court has received in this matter. Salahuddin is a prodigious *pro se* litigant. At his deposition in this matter, Salahuddin stated that he has initiated 17 federal court actions challenging the conditions of his confinement at various state prisons, ten of them involving Green Haven. He has brought 13 actions in the Southern District in the past four years. Four of these actions were assigned to this court, some having been accepted under a generous interpretation of the related case rule.

Virtually every aspect of prison life has been the subject of complaint by Salahuddin. His pleading in the instant action alleges 87 causes of action and contains 208 paragraphs of factual allegations. Interrogatories directed to the defendants run 90 pages and pose some 4,400 questions covering such topics as Department Commissioner Thomas E. Coughlin III's ("Coughlin") past residences, rent, taxes,

credit card and social security numbers, as well as information on "any unusual incidents" between defendants and inmates, inmates' right to own radios and an unidentified "free snack program." The complaints in the other three cases before this court are as lengthy and broad-ranging as is that in the case at hand. In *Salahuddin v. Harris*, 83 Civ. 1782, for example, Salahuddin alleges 18 causes of action regarding an altercation with a guard and the resulting misbehavior report and confinement to his cell. All but one of the causes of action were dismissed for failure to state a claim in an opinion dated October 4, 1983; the remaining claim is Salahuddin's allegation that he was denied the right to present witnesses on his behalf at the disciplinary proceeding. In *Salahuddin v. Harris*, 83 Civ. 1886, Salahuddin alleged 25 causes of action arising out of another disciplinary action against him. The court dismissed that action by order dated May 15, 1984 because of Salahuddin's refusal to continue his deposition. In the four actions, Salahuddin has filed hundreds of pages of affidavits, letters to the court, copies of letters to prison officials and other persons, memoranda and other materials.

While Salahuddin's numerous complaints are not so patently "frivolous and vexatious" as to justify an injunction against further filings, *Gordon v. United States Department of Justice*, 558 F.2d 618 (1st Cir.1977); *see Kane v. City of New York*, 468 F.Supp. 586, 590–91 (S.D.N.Y.), *aff'd*, 614 F.2d 1288 (2d Cir.1979), they are indicative of the problems courts face in handling condition-of-confinement cases. The time spent by the courts and Attorney General's office on complaints such as Salahuddin's is time that may not be spent considering other matters, and should the pending actions be found to lack merit, an injunction of the sort referred to above will be considered.

### The Instant Action

The history of the instant action was set forth in this court's opinion of June 29, 1983, and will only be summarized here.

Although the complaint was filed in 1980 and the case was referred to a magistrate for supervision of discovery and hearing of pretrial motions, no depositions were taken until December 1983. Salahuddin filed a motion for a preliminary injunction in December 1982. Despite several extensions granted by the court, defendants failed to file opposition, and the motion was granted in part by opinion dated June 19, 1983. The instant motion is defendants' first dispositive motion in this matter.

According to a letter from the Attorney General, defendants' motion papers were served on plaintiffs by mail on February 6, 1984, but one of the envelopes arrived in damaged condition, and the papers were returned, apparently because Salahuddin refused to accept them. The Attorney General mailed the papers once more on February 14, 1984. Because of these delays, the court postponed the full submission date until March 30, 1984. By affidavits dated March 30 and April 7, 1984, Salahuddin requested an extension of time to respond to the motion. The request was granted, and, by order dated April 13, 1984, this court ordered that Salahuddin file his response papers by April 27, 1984 and that the motion would be deemed fully submitted on May 4, 1984. On June 14 and June 15, 1984, this court received a memorandum of law from Salahuddin in response to the motion. Although this submission was received well after the full submission date, this court has considered it because of the policy of liberality in the treatment of *pro se* complaints.

### The Complaint

The complaint contains 87 causes of action ("Causes") challenging numerous aspects of the conditions of confinement at Green Haven pursuant to 42 U.S.C. § 1983. The Causes may be sorted into the following categories of legal claims.

1. **The "four-bag" rule** (Causes 1–5). Department Directive 4913 ("Directive") provides that when an inmate is transferred between institutions, the state will ship for him without charge up to four state-issue duffel bags of property, as well as a

musical instrument. Property beyond the four-bag limit must, at the inmate's choice, be shipped at the inmate's expense to the new institution or to an outside relative or friend, given to a charity or another inmate, or destroyed. Plaintiffs claim that the Directive discriminates against the poor (Cause 1), that the four-bag limit is "unconstitutional" (Cause 2), that the Department's alleged practice of placing legal materials in a separate bag violates the Fourth, Eighth, Ninth and Fourteenth Amendments (Cause 3), and that the Department's seizure or loss of bags is a taking and a violation of due process (Causes 4–5).

**2. Recognition of plaintiffs' Muslim names** (Causes 6–9, 20). Plaintiffs complain of the Department's policy of recognizing inmates by their "commitment names," rather than their Muslim names, for use on incoming and outgoing mail and in Department records.

**3. Ownership of electric typewriters** (Causes 13–15). Plaintiffs allege that certain white inmates at Green Haven were allowed to own electric typewriters, while plaintiffs were not.

**4. Access to and quality of law library facilities** (Causes 16, 18–19). Plaintiffs claim that the Green Haven law library hours and conditions were not up to constitutional standards. The complaint states that the library was open for less than 42 hours per week (Cause 16) and had

> extremely crowded conditions, poor or insufficient ventilating system, no windows, insufficient law materials, insufficient law clerks ... law journals cannot be read until Saturday's, being compelled to remain in the law library after certain times of the day and/or days, class members can only use two books at any one given time while in the law library, those inmates that are not confined to their cells cannot use law books and/or material over night, during one time, absolutely no inmate was allowed to use the law books in their cells, exceptionally long waits for papers that are being sent outside the facility to be photo-copied ....

(Cause 18) (errors in all quotes are as in original). Cause 19 states that "Defendant Reynolds has been engaged in giving out excessive infractions to the plaintiff class that are attending law library unjustly with the full backing of defendants Harris, Keenan, Scully, Riley and other agents ...."

**5. Access to Masjid** (Causes 10, 11, 12, 21). The complaint states that defendants have limited the time of day during which inmates may attend Masjid (the Muslim house of worship) (Cause 10); "limiting the Imam's (religious heads) of the Muslim faith in the number of believers and/or none believers that they may place on a call-out to the Masjid in violation of Imam's" constitutional right. (Cause 11); "limiting the number of call-outs that the Imam's may use per week" (Cause 12); failed "to approve an emergency call-out for all Muslim believers and none believers whenever there is an outside guest" (Cause 21); and "whenever an outside guest appear at the muslim community to spead the light of Islam, is a violation of those guest's" constitutional rights. (Cause 22).

**6. Conduct and procedure of the Green Haven Inmate Liaison Committee ("ILC")** (Causes 23–86). Each of the plaintiffs was elected by his housing unit to the ILC, and each was elected to the ILC Executive Team by ILC members. Salahuddin was the ILC chairman. The complaint alleges that defendants conducted ILC elections and operated the ILC in an unconstitutional manner. Specifically, the complaint alleges that defendants delayed ILC elections (Cause 23), that ILC members were unconstitutionally placed in electoral jeopardy before the ILC had convened the requisite 13 times per term, that alternate ILC delegates were paid less than primary delgates, that the Department kept the ILC ineffective, that an unidentified Green Haven official stole money that should have been paid to an alternate who took Ashby's place as a delegate for a certain period, and that Salahuddin's disciplinary removal from the ILC was in retaliation for his investigation into law library

conditions in preparation for this lawsuit and was intended to frustrate the ILC in its investigations.

**7. Additional causes** (Causes 17 and 87). The 87th and final cause simply asks for injunctive relief. Cause 17 alleges that photocopying costs seven cents per page at Green Haven.

**Discussion**

■ **1. The four-bag rule.** Plaintiffs' claims as to the four-bag rule fail as a matter of law. The rule seeks to limit the state's financial obligation to transport an inmate's belongings to a reasonable amount. Plaintiffs themselves note accumulation of "as many as 17 bags." Assuming that plaintiffs are challenging the rule as an unreasonable seizure of property, it must first be noted that the Supreme Court has not decided whether an inmate retains Fourth Amendment privacy rights. *See Bell v. Wolfish,* 441 U.S. 520, 553, 556–57, 99 S.Ct. 1861, 1881, 1883, 60 L.Ed.2d 447 (1979). Even if such rights exist, the alleged seizure was reasonable as a matter of law, *see Brown v. Hilton,* 492 F.Supp. 771, 774–75 (D.N.J.1980), considering that the state has a substantial interest in orderly and fiscally prudent prison administration and that plaintiffs have complained not of a limit on property they may own or transfer with them but only of a limit on property the transport costs of which the state will pay. *See McCrae v. Hankins,* 720 F.2d 863, 869 (5th Cir.1983).

■ Plaintiffs' challenge to the rule as a taking without due process also fails as a matter of law because plaintiffs had notice of the regulation at issue and the rule was not arbitrary or unreasonable. *See Sullivan v. Ford,* 609 F.2d 197 (5th Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980). To the extent that plaintiffs' allegations may be construed to charge that defendants negligently or deliberately deprived plaintiffs of property other than pursuant to the four-bag rule, the claims are barred by *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), since a Department directive provided to the court by defendants concerning

the processing of inmate claims for lost property indicates that adequate administrative and judicial remedies were available when plaintiffs were at Green Haven. Plaintiffs testified at their deposition that they knew of these procedures. For these reasons, Causes 1 through 5 fail to state a claim.

■ Plaintiffs' claims regarding the four-bag rule must also be dismissed because they are time-barred. The statute of limitations for § 1983 actions is three years. *Pauk v. Board of Trustees,* 654 F.2d 856 (2d Cir.), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1981). According to the complaint, the sole incident upon which plaintiffs 'base their first five causes of action occurred during June 1976. The complaint was filed more than four years later, on December 18, 1980. For this reason, defendants' motion to amend their answer to include a statute of limitations defense is granted and plaintiffs' first five Causes, assuming *arguendo* that they stated a claim, must be dismissed as time-barred.

**2. Recognition of plaintiffs' Muslim names.** Ashby and Blake testified that they had not used their Muslim names uniformly or in all contexts and that use of their commitment names was not religiously offensive to them. Salahuddin testified that he has used three different non-Muslim names, as well as the religious name "Richard 23X". Salahuddin testified that upon his arrest on his current charges in 1973, Salahuddin was carrying identification bearing the name Richard Brown, and gave the police either the name Richard Brown or the name Richard Shields. He testified that use of his commitment name, Richard Brown, is religiously offensive to him.

Salahuddin admitted being advised on numerous occasions that the Department would recognize a state court-ordered name change, and he testified that he was aware of the name change procedure set forth in New York Civil Rights Law §§ 60–64. He stated that he had declined to seek relief

under that statute because he believed that a statutory name change differs from a common-law name change in New York in that resort to the former precludes any subsequent resort to the latter. Salahuddin professed contemplation of name changes in the future, which he wants to be able to accomplish at will. Salahuddin testified that resort to the statutory mechanism would not be religiously offensive to him.

New York Civil Rights Law §§ 60–64 provides a procedure for changing one's name. Memoranda from prison officials to Salahuddin submitted by defendants advised Salahuddin that this procedure was available and that the Department would honor such a court-ordered name change. According to the affidavit of Coughlin, prison law libraries contain materials regarding such a name change and prison legal assistants could assist a prisoner desiring to use the statutory procedure.

Few courts have considered questions of this type. *Barrett v. Virginia*, 689 F.2d 498 (4th Cir.1982), held unconstitutional a statute construed to prohibit any name change by an inmate for any reason. Neither the New York statute nor Department policy has this effect, and *Barrett* is thus distinguishable. *Salahuddin v. Carlson*, 523 F.Supp. 314 (E.D.Va.1981), held that prison officials must recognize a statutory, court-ordered name change. While plaintiffs in *Masjid Muhammed-D.C.C. v. Keve*, 479 F.Supp. 1311, 1321–23 (D.Del.1979), cited by Salahuddin, included at least one prisoner who had changed his name in the courts and several who had not, it appears that the defendants there refused to recognize any change of name, even statutory or court-ordered. The latter two cases are also thus distinguishable.

The Department's policy of recognizing statutory but not common-law name changes serves a legitimate state purpose: Statutory name changes are "speedy, definite and a matter of record, so as to be easily proved ...." *Smith v. United States Casualty Co.*, 197 N.Y. 420, 429, 90

N.E. 947 (1910). Prison officials have a legitimate interest in avoiding confusion and simplifying record-keeping. *United States v. Duke*, 458 F.Supp. 1188, 1189 (S.D.N.Y.1978). The easy availability of the statutory scheme constitutes the "reasonable opportunit[y] ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972). Common-law name change, even for religious purposes, is among the rights that plaintiffs lost as "inconsistent with their status as prisoner[s] of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Causes 6, 7, 8, 9 and 20 are dismissed for this reason.

**3. Ownership of electric typewriters.** Plaintiffs appear to complain that only certain white inmates at Green Haven, none of whose names they were able to give at their depositions, were allowed to own electric typewriters. However, Blake and Ashby testified that they never sought to obtain electric typewriters, and that they had access to electric and manual typewriters owned by the Department. Salahuddin testified that he owned an electric typewriter while at Green Haven, and the hundreds of typewritten pages this court has received from Salahuddin in this and other actions is evidence of the adequacy of that typewriter. The complaint asserts that certain defendants refused to allow Salahuddin to purchase an electric typewriter, and that refusal deprived him of his right of access to the courts. Although Salahuddin already owned an electric typewriter, he seems to have wished to purchase a second one.

While this court is aware of no case considering a Sixth Amendment right to own an electric typewriter, the Court of Appeals for this Circuit has held that inmates have no constitutional right to any typewriter at all. *Wolfish v. Levi*, 573 F.2d 118, 132 (2d Cir.1978), *aff'd in part and rev'd in part on other grounds*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The claim of unequal treatment fails for lack of any evidentiary support for plaintiffs' conclusory allegations. Causes 13, 14 and 15 are dismissed for these reasons.

**4. Access to and quality of law library facilities.** Plaintiffs assert that the law library hours and facility were not up to constitutional standards in a number of particulars. However, Ashby and Blake testified that they had no personal need for law library facilities. Salahuddin's complaints center around the tenure of defendant Carol Reynolds ("Reynolds") as officer in charge of the law library. Salahuddin testified that during Reynolds' tenure, he was not permitted law library privileges, although before and since her tenure he was. The uncontradicted affidavit of Charles Scully ("Scully"), Green Haven superintendent, states that the facilities and hours of the Green Haven law library have been expanded since the events at issue here and that the library now contains 5,000 volumes in a 2,000-square-foot room and is open at least 42 hours per week. The affidavit also states that Reynolds no longer supervises the law library.

▪▪▪▪ Plaintiffs' claims for injunctive relief on this issue are moot because Blake and Ashby have been released on parole and Salahuddin has been transferred from Green Haven. In any event, restrictions on Salahuddin's use of the law library ceased with Reynolds' leaving the post of library supervisor. Blake's and Ashby's claims fail because of their admission that they had no personal need for the library. What remains of these Causes is thus Salahuddin's claim for damages because of the library's inadequate size and other conditions, as well as his inability to attend the library daily. However, in order to support a constitutional claim, Salahuddin must show how, because of conditions and procedures at Green Haven's law library, his access to the courts was impaired. Given Salahuddin's 17 pending federal actions, ten concerning his confinement at Green Haven, the court holds that as a matter of law this showing has not been made. As in *Collins v. Haga*, 373 F.Supp. 923, 925

(W.D.Va.1974), plaintiffs' "failure ... to relate specific incidents where their rights were denied, or any specific damage or prejudice resulting therefrom" must bar their claims. *See also Cotton v. Hutto*, 540 F.2d 412, 414 (8th Cir.1976) (allegation that guards turned air conditioners on during inmate showers not actionable absent allegation of resulting illness or injury); *Tuggle v. Evans*, 457 F.Supp. 1015, 1017 (D.Colo.1978) (occasionally unsanitary food conditions, absent allegation of any resulting illness, not actionable).

**5. Access to Masjid.** Ashby, Blake and Salahuddin testified that they were able to attend Masjid for several hours of Jumah services and meetings on Fridays and Sundays. Ashby testified that this access was adequate. Salahuddin's principal complaint appears to be that after he was removed from the ILC, he was not permitted the daily access to Masjid he testified he had been permitted as an ILC member. However, Salahuddin testified that even after his removal from the ILC, he was still permitted to attend Masjid on Fridays and during special events. (Salahuddin Deposition at 135–37.)

▪▪▪▪ "[R]easonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz, supra*, 405 U.S. at 322 n. 2, 92 S.Ct. at 1081 n. 2. Depending on circumstances, these reasonable opportunities may include the opportunity to attend chapel services, but that opportunity may be limited if the limitation "has an important objective and the restraint on liberty is reasonably adapted to achieving that objective." *Mawhinney v. Henderson*, 542 F.2d 1, 3 (2d Cir.1976). Plaintiffs had access to Masjid on Fridays, by their own testimony the day of the week with the greatest religious significance, and on other days as well. The court is aware of no case holding that daily chapel access is required under the First Amendment, and plaintiffs have not testified that daily Masjid access is essential to the practice of their religion, nor have they ex-

plained why occasional prayer outside the Masjid would not constitute adequate exercise of their religion. The court holds that the Masjid access permitted to plaintiffs constituted the reasonable opportunity to exercise religious freedom required by *Cruz.* Accordingly, Causes 10, 11, 12, 21 and 22 are dismissed.

**6.** *Conduct and procedures of ILC.* The objectives of the ILC, set out in Department Directive 4002, were:

to provide:

1. Effective communications between inmates and administration for accurate dissemination and exchange of information.

2. A means to facilitate consideration and analysis of suggestions from inmates relative to facility operations.

Plaintiffs' claims relate to improper elections to the ILC, insufficient payments to alternate delegates, conversion of less than $120 that they allege should have been paid to an alternate (who is not a plaintiff in this action) who took Ashby's place on the ILC when Ashby was on court appearance for about two months, and Salahuddin's disciplinary removal from the ILC in retaliation for his investigation into law library conditions in preparation for the instant action. The Green Haven superintendent states by affidavit that Salahuddin was removed from the ILC because of a confrontation with Reynolds.

As to the alleged improprieties in various ILC elections, during the time at issue plaintiffs either won elections or were appointed as delegates to the ILC and plaintiffs thus suffered no damage. As to the claim of conversion, plaintiffs' complete lack of evidence that the deprivation, if any, was not mere accounting error or oversight, in addition to the availability of an administrative remedy, leaves the claim outside the scope of § 1983. More importantly, plaintiffs themselves suffered no injury.

Assuming that plaintiffs suffered damages from ineffective functioning of the ILC, however, these Causes fail to state a claim. Despite First Amendment associational rights, prison officials are entitled in the name of discipline, order and security to forbid collective organizational activity among inmates. *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 128–29, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977). The permitting of some organizational activity does not require permission of all organizational activity. *Id.* at 133–36, 97 S.Ct. at 2541–43.

In *Paka v. Manson,* 387 F.Supp. 111 (D.Conn.1974), inmates sought to form "an organized group of elected representatives of inmates within the prison to meet together, and to take their proposals, criticisms, suggestions and the like to the administration." *Id.* at 115. The court held that the inmates had no constitutional right to have such a group, even though other groups were permitted. *Id.* at 123, 124–25.

Since the ILC is not created by statute, an inmate has no protectable expectation to remain on the ILC or in its functioning in a certain manner. In addition, the cases cited above hold that inmates have no constitutional right to have an ILC in the first place. If plaintiffs lack a right to any ILC, they lack a right to an ILC that is in their view effective, *i.e.,* one that meets and holds elections at certain intervals, that has more than one primary representative per housing area, or that is permitted to conduct investigations and bring lawsuits as part of its official duties. Causes 23–86 are dismissed for these reasons.

**7.** *Additional claims.* Cause 87 alleges simply that plaintiffs lack a remedy at law and have suffered irreparable harm. It is dismissed as a separate Cause. Cause 17 alleges that photocopying costs seven cents per page at Green Haven. This court has received numerous documents from Salahuddin which appear to have been duplicated by carbon paper, indicating that the expense of photocopying has not limited Salahuddin's access to the courts. In any event, this Cause, like the Cause regarding an electric typewriter, fails to state a claim. *Cf. Wolfish, supra,* 573 F.2d at 132.

*Claims for Injunctive, Declaratory and Nominal Relief*

■ Although all claims have been dismissed, it should be noted that even if some claims survived, plaintiffs' prayers for injunctive and declaratory relief and for nominal damages, *see Hernandez v. European Auto Collision, Inc.,* 487 F.2d 378, 387 (2d Cir.1973), would be moot because Salahuddin has been transferred from Green Haven and Ashby and Blake have been released on parole, and because none of the plaintiffs allege any probability of being returned to Green Haven. For this reason, plaintiffs' claims for injunctive, declaratory and nominal damages warrant dismissal.

*Preliminary Injunction*

By opinion dated June 19, 1983, this court granted Salahuddin a preliminary injunction. The injunction was granted to Salahuddin without benefit of opposition papers on defendants' behalf. The items as to which preliminary relief was granted have now been held to be inadequate as a matter of law or moot because of Salahuddin's transfer from Green Haven. Accordingly, the preliminary injunction is hereby vacated.

*Interrogatories*

■ As was noted above, plaintiffs' interrogatories contain some 4,400 questions on numerous irrelevant topics. The interrogatories are clearly burdensome, oppressive and overbroad, to say the least. Even were the court not to dismiss the complaint, plaintiffs' motion to compel answers to these interrogatories would be denied. Answers to the interrogatories are not necessary to decide defendants' summary judgment motion.

Each Cause having been dismissed pursuant to the motion for summary judgment, the complaint is dismissed and the clerk is directed to enter judgment to this effect.

**IT IS SO ORDERED.**