896 F.Supp. 895 (1995)
Larry GEORGE, Plaintiff,
v.
Michael J. SULLIVAN, Chris Ellerd, Dan Buchler, Defendants.
No. 94-C-0583-C.
United States District Court, W.D. Wisconsin.
July 17, 1995.
*896 Larry George, pro se.
Stephen J. Nicks, Assistant Attorney General, Madison, WI, for Michael J. Sullivan, Chris Ellerd, Dan Buchler.

ORDER
CRABB, Chief Judge.
This action brought pursuant to 42 U.S.C. § 1983 and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(c), is before the court on defendants' motion for summary judgment. Plaintiff's claim is that defendants denied him access to certain reading materials, which violated his right to free exercise of religion. Because defendants have established that their conduct comports with the Religious Freedom Restoration Act and passes constitutional scrutiny, summary judgment will be granted.
From the submissions provided by the parties, I find the following facts as undisputed.

UNDISPUTED FACTS
At all relevant times, plaintiff was confined at Racine Correctional Institution in Sturtevant, Wisconsin. Defendant Sullivan is the Secretary of the Wisconsin Department of Corrections. Defendant Ellerd was the Security Director at Racine Correctional Institution, and defendant Buchler was the Deputy Warden at Racine Correctional Institution.
While plaintiff was incarcerated at Racine, he sent a request to defendant Buchler for permission to order items from the Church of Jesus Christ Christian. Along with his request, plaintiff sent a pamphlet for Buchler's review. Both Buchler and Ellerd received the pamphlet and discussed it with Raymond Fromolz, Chief of Security Services in central office, after which Ellerd decided to refuse plaintiff's request. On July 13, 1994, Ellerd informed plaintiff of this decision in writing. Buchler and Ellerd concluded from their experience at Racine and their training that the material from the Church of Jesus Christ Christian that plaintiff submitted was from a group that represents a known white racial supremacist organization and would be considered gang related. The Wisconsin prison system defines gangs as disruptive groups of individuals that threaten, coerce, or harass others or engage in illegal or illicit activities. Such groups are a threat to the security of institutions and staff safety.
The material submitted by plaintiff fosters animosity among people of different races and cultures. Such animosity is especially conducive to violence in correctional institutions inhabited by violent offenders in very close quarters. Most of the gang affiliations are along race lines. The Aryan Nation is considered a white gang at Racine. Inmates at Racine are not allowed to possess photographs depicting gang symbols or of persons flashing gang signs.
For as long as Racine Correctional Institution has existed it has had to deal with the propaganda sent to inmates from organizations *897 that purport to be religious in nature but in reality propound secular ideology such as the superiority of one race over another. Racine Correctional Institution's security is constantly challenged by gang activity. Management of security would be tested severely if a gang could operate openly by calling itself a religion.
Defendant Sullivan had no involvement in the events surrounding the decision to disallow Church of Jesus Christ Christian materials into Racine Correctional Institution; and he did not have reason to be aware of this matter. Sullivan is not involved in the day-to-day operations of the institution and did not receive a letter from plaintiff regarding this matter.

OPINION
Plaintiff contends that his right to freely practice religion is infringed by the prison's denial of access to Church of Jesus Christ Christian materials under the auspices of Wis.Admin.Code DOC § 303.20. This regulation provides, in part:
Any inmate who intentionally participates in any group activity which is not approved under s. DOC 309.365 or is contrary to provisions of this chapter, to institution policies and procedures or to a direct verbal order from a staff member, but does not create a serious risk of injury to persons or property, is guilty of an offense.
Wis.Admin.Code DOC § 303.20(1). Plaintiff's claim sounds under the First Amendment and the Religious Freedom Restoration Act.
Defendants seek summary judgment on four grounds: (1) the Religious Freedom Restoration Act is unconstitutional, thereby subjecting defendants to less rigorous scrutiny under the Constitution; (2) disallowing the material in question passes statutory muster by serving a compelling state interest in the least restrictive manner; (3) defendants are entitled to qualified immunity; and (4) defendant Sullivan had no involvement with any potential deprivation asserted by plaintiff.
Lawful incarceration necessarily narrows the privileges and rights safeguarded by law. Woods v. O'Leary, 890 F.2d 883, 885 (7th Cir.1989) (citing Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)). In the First Amendment context, the Supreme Court has stated:
[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.
Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1973). Among those First Amendment protections incarcerated inmates retain is the directive that no law shall prohibit the free exercise of religion. In Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the United States Supreme Court held that a religiously neutral and generally applicable rule that happens to burden members of a particular religious group does not violate the right to the free exercise of religion. Id. at 879-885, 110 S.Ct. at 1603.
The recently enacted Religious Freedom Restoration Act erects a separate, and more rigorous, statutory standard for governmental interference with religious practice. 42 U.S.C. § 2000bb-1(b) provides:
Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person 
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.
See Canedy v. Boardman, 16 F.3d 183, 186 n. 2 (7th Cir.1994).
Because it is appropriate to avoid addressing the constitutionality of a statute if possible, McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir.1991), and because I find that defendants have complied with the more rigorous *898 standards set by the Religious Freedom Restoration Act, I start and end with defendants' second argument, that summary judgment is appropriate because forbidding plaintiff access to the disputed material furthered a compelling state interest and was done in the least restrictive manner. See 42 U.S.C. § 2000bb-1(b). Defendants assert correctly that there can be no argument that there is a compelling state interest in the security of the Racine Correctional Institution. See United States v. Slaughter, 900 F.2d 1119, 1126 (7th Cir.1990) (compelling state interest in law enforcement and public safety); Chambers v. Ingram, 858 F.2d 351, 360 (7th Cir.1988) (compelling state interest in protecting the safety of others); Azeez v. Fairman, 604 F.Supp. 357, 363 (C.D.Ill.1985) (prison security, discipline and administration are compelling state interests by definition). Defendants argue further that disallowing possession of the material constitutes the least restrictive means to accomplish the prison security goal because mere possession of white supremacist materials fosters disruptive group formation. The Supreme Court has repeatedly recognized that prison officials are better situated than judges to evaluate penological objectives:
[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.
Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). See also Whitley v. Albers, 475 U.S. 312, 321-22, 106 S.Ct. 1078, 1085-1086, 89 L.Ed.2d 251 (1986) (quoting Bell); Hudson v. McMillian, 503 U.S. 1, 3, 112 S.Ct. 995, 997, 117 L.Ed.2d 156 (1992) (same).
Plaintiff has not denied that the material he sought fosters animosity among individuals of different races or that such animosity is particularly conducive to violence in correctional institutions. He has not hinted at an alternative to banning this material that would protect the rights he claims. When the mere presence of volatile materials, even religious items, indisputably threatens the security of the inmates and staff at a penal institution, a prohibition on those materials may be justified. I am persuaded that defendants have employed the least restrictive means to accomplish a compelling state interest. Therefore, defendants have satisfied the heightened standard set out in the Religious Freedom Restoration Act.
Satisfaction of this heightened standard necessarily includes satisfaction of the lesser standard normally applied to content-neutral regulations in a penal context. Having found that defendants have met plaintiff's constitutional and statutory challenge, I need not address defendants' alternative arguments. Accordingly, defendants' motion for summary judgment will be granted.

ORDER
IT IS ORDERED that defendants' motion for summary judgment is GRANTED.