Thomas Eldridge BARRETT, Appellee,

v.

COMMONWEALTH OF VIRGINIA; Arlington Circuit Court, Appellants.

No. 82–6047.

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1982.

Decided Sept. 20, 1982.

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Richmond, Va., on brief) for appellants.

S. Keith Barker, Richmond, Va. (Tuck, Freasier & Herbig, Richmond, Va., on brief), for appellee.

Before WINTER, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

The Commonwealth of Virginia and the Circuit Court of Arlington County appeal from the district court's ruling that Va. Code Ann. § 8.01–217 (Cum.Supp.1982) violates the first amendment insofar as the statute withholds legal recognition of a prisoner's religiously motivated change of name. We affirm that ruling but reverse a subsequent order in which the court prescribed the manner in which Virginia must reorganize its correctional records.

I.

Thomas Eldridge Barrett, a Virginia prisoner, converted to the Islamic or Muslim faith while in prison. Conforming to the teachings of his religious leader, Barrett assumed the name "Abdul Taleb Mohammed Ali," and he twice applied to the Circuit Court of Arlington County, Virginia, for legal recognition of his adopted name. His petitions were refused pursuant to § 8.01–217 of the Virginia Code, which provides in pertinent part:

Any person desiring to change his own name ... may apply therefor to the circuit court of the county or city in which the person whose name is to be changed resides ...; *provided, however, that no application shall be accepted from any person who is incarcerated in any adult or*

*juvenile correctional facility or jail,* or who is a probationer unless the court finds that good cause exists for consideration of such application from such probationer under the circumstances alleged. Va.Code Ann. § 8.01–217 (Cum.Supp.1982) (emphasis added).[1]

Acting pro se, Barrett brought suit under 42 U.S.C. § 1983 against the Commonwealth of Virginia and the Circuit Court of Arlington County,[2] alleging that the proviso of § 8.01–217 violates his first amendment right freely to exercise his religion. The district court denied cross-motions for summary judgment and referred the matter to a magistrate for an evidentiary hearing.

The magistrate received testimony from plaintiff, from the Assistant Director of Corrections for the Arlington County Jail, and from the Deputy Director of the Department of Corrections in charge of prisons. There was no evidence that plaintiff was punished or denied prison privileges for using his Muslim name, and the magistrate found that plaintiff's coreligionists in prison call him by that name without interference by the authorities.[3] Testimony put on by the state, however, indicated that a prisoner's records are maintained in the name of the prisoner and a number which is assigned to him at the time of incarceration, and that legal recognition of plaintiff's adopted name would lead many other prisoners to change their names and would jeopardize the maintenance of adequate identification records. Claiming that it would be unduly burdensome to amend its records to reflect name changes, the state also asserted that such changes would create confusion in prison operations, in communications among various law enforcement agencies, in efforts to apprehend escaped prisoners, and in the service of detainers. The magistrate acknowledged the vital governmental interest in accurately identifying prison inmates, and she noted that some prisoners might abuse name changes to frustrate legitimate law enforcement functions. Balancing the state's concern against plaintiff's interest in religious expression, however, the magistrate concluded that § 8.01–217 violates plaintiff's religious rights under the first amendment by flatly prohibiting him from changing his legal name.

The district court adopted the magistrate's findings and recommendation and invalidated § 8.01–217 as applied. Like the magistrate, the district court did "not denigrate the defendant's concern relative to maintaining identification records," but concluded that "those concerns [are] outweighed by the plaintiff's First Amendment rights." The court ordered the Circuit Court of Arlington County to consider a proper application for a change of name by plaintiff. The order stated that defendants' records may reflect "not only the plaintiff's chosen, changed, religious name, but also such other identifying name, number or symbol as may be necessary to maintain continuity between the records kept on the plaintiff under his name, Thomas Eldridge Barrett, and those kept under a new name." By a motion for clarification, defendants sought the district court's permission to reflect the plaintiff's new name as an alias in their existing records. The district court, however, ruled that "the records [must] be changed to reflect the plaintiff's chosen, changed, religious name followed by his old name and any aliases that he may have as a/k/a's or other identifying material."

---

1. The statute appears to provide the only legal means by which one may change his name in Virginia. Another Virginia statute makes it a class 3 misdemeanor, punishable by a $500 fine, to assume a name unlawfully. Va.Code Ann. § 18.2-504.1 (Repl.Vol.1982).

2. In this opinion, defendants will sometimes be referred to collectively as "Virginia" or "the state."

3. We note in particular that Barrett did not allege that correctional authorities have applied the penal sanction of § 18.2-504.1 to punish inmates who assume Muslim names. *See* note 1 *supra.* In deciding this case, we have found it unnecessary to consider whether § 18.2-504.1 impermissibly chills the exercise of first amendment rights.

## II.

One who is incarcerated for violation of the criminal law retains first amendment rights to the extent that those rights are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Under this principle, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by" the First and Fourteenth Amendments without fear of penalty." *Cruz v. Beto,* 405 U.S. 319, 322 n.2, 92 S.Ct. 1079, 1081 n.2, 31 L.Ed.2d 263 (1972) (per curiam). A restriction on prisoners' religious expression will not be deemed unconstitutional if the restriction is necessary to safeguard legitimate institutional and penological interests; moreover, correctional officials' appraisal of those interests command great deference on the part of the courts. *See Sweet v. South Carolina Department of Corrections,* 529 F.2d 854 (4 Cir. 1975) (en banc); *cf. Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977) (rights of speech and association); *Procunier v. Martinez,* 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974) (right to correspond with nonprisoners). But the determinations of prison officials of the need for restrictions are not dispositive; such restrictions are subject to judicial review and will be struck down where they are not "reasonably and substantially justified by considerations of prison discipline and order." *Sweet,* 529 F.2d at 863.[4]

In this case, plaintiff asserts that Virginia's categorical prohibition on name changes by prisoners abridges his right to express his faith by adopting a Muslim name. Virginia does not dispute that a change of name may be a religious exercise protected by the first amendment, nor does it question the bona fides of plaintiff's desire to take a Muslim name.[5] Rather, Virginia insists that to grant legal recognition of prisoners' religiously motivated name changes would disrupt the correctional authorities' identification records and thereby produce confusion in internal prison operations (such as delivering mail, screening visitors, and accounting for outside medical services), in the interstate detainer system, and in efforts to recapture escaped prisoners.

In arguing that state interests justify the challenged prohibition, Virginia places principal reliance on *Jones v. North Carolina Prisoners' Labor Union.* There the Supreme Court considered whether a regulation barring all meetings, solicitation, and bulk mailings by a prisoner's union comported with the first amendment. A three-judge district court had invalidated these restrictions, notwithstanding its findings that the state correctional authorities sincerely believed that concerted activities by inmates would jeopardize prison discipline and security and that those fears were arguably justified. The Supreme Court observed that "[w]ithout a showing that these beliefs were unreasonable, it was error for the District Court to conclude that [the state] needed to show more." 433 U.S. at 127–28, 97 S.Ct. at 2538–39. After satisfying itself that the restrictions imposed were

---

**4.** *See Al-Baaree Abdullah Al-Ghani v. Cox,* 660 F.2d 488 (4 Cir. 1981) (per curiam) (unpublished). In *Cox,* a Muslim prisoner alleged that he was threatened with disciplinary charges and the denial of certain benefits if he persisted in using his religious name. Vacating summary judgment for the defendants, we remanded for a determination of whether the plaintiff's use of a Muslim name was an expression of sincere religious belief, whether threats in fact occurred, and whether such threats were necessary to further the prison's interest in discipline.

**5.** Virginia does contend, however, that the Muslim faith does not demand, but merely recommends, that its believers assume a religious name. Plaintiff offered unrebutted evidence that his change of name has a theological basis. That basis and the unchallenged sincerity of plaintiff's religious convictions suffice to invoke first amendment protection. *See Africa v. Pennsylvania,* 662 F.2d 1025, 1029-30 (3 Cir. 1981), *cert. denied,* -- · U.S. --··, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982); *Masjid Muhammad—D. C. C. v. Keve,* 479 F.Supp. 1311, 1323 (D.Del.1979).

indeed reasonable, the Court upheld the regulation. *See id.* at 129–33, 97 S.Ct. at 2539–2542. *See also Pittman v. Hutto,* 594 F.2d 407 (4 Cir. 1979) (applying *Jones* to uphold censorship of a prison newspaper).

Virginia's argument is that it is entitled to prevail here because informed officers of its correctional system testified that a contrary result would threaten important penological objectives and their view has "not been conclusively shown to be wrong." *Jones,* 433 U.S. at 132, 97 S.Ct. at 2541. Indeed, the magistrate, whose findings were expressly adopted by the district court, found that it is "not entirely unreasonable" to assume that, given the opportunity, some inmates would change their names for the purpose of confounding prison operations and evading service of detainers. Hence, Virginia asserts, the district court was not free to subordinate the state's interests so as to accommodate the plaintiff's interest in religious expression.

We think that Virginia reads the *Jones* opinion too broadly. *Jones,* of course, teaches that reasonable restrictions on prisoners' first amendment rights are constitutional and that correctional authorities' assessment of penological and institutional interests are to be received with deference. But *Jones* does not repudiate the principle that such restrictions are judicially reviewable and that the determination of their reasonableness rests ultimately with the courts. *Cf. Gallahan v. Hollyfield,* 670 F.2d 1345 (4 Cir. 1982) (per curiam) (upholding a Cherokee Indian prisoner's right to have long hair, in accordance with the tenets of his religion).

The district court considered the reasonableness of the prohibition, and it ruled in effect that the state's asserted interests do not reasonably justify the curtailment of Barrett's religious expression. The district court did "not denigrate" the governmental interest in adequate identification records, and it recognized that fear of prisoner misuse of legal name changes is "not entirely unreasonable." But these qualified statements do not disguise the central theme of the district court's memorandum opinion—

*i.e.,* that the prohibition of § 8.01–217 is un reasonably broad:

> The problem with the statute is its rigidity. It is an absolute prohibition against not only any change of name, but even a consideration of a request therefor received from a prisoner. . . .

No "good cause" exception for inmates, comparable to that for probationers, is contained in the statute. "Stability of identification," albeit not in a present prison setting, would seem also an important consideration with probationers, themselves convicted felons or misdemeanants. The lack of an opportunity for even consideration by the circuit court and the absence of any exception for good cause forecloses an inquiry by that court as to the possibility of less restrictive methods, *e.g.,* use of an added "a/k/a" or number, or both, which would accommodate the state's record keeping and identification needs without infringing upon the plaintiff's rights. Also foreclosed is any inquiry as to the bona fides of the reasons for a requested change.

■■ We think that the district court was correct in its analysis. The breadth of limitations on first amendment rights is manifestly relevant to an assessment of the reasonableness, and hence the constitutionality, of such encroachments. In *Procunier v. Martinez,* the Court expressly held that restrictions on prisoners' first amendment rights pass constitutional muster only if they further important state interests *and* are no broader than is necessary to the protection of those interests. 416 U.S. at 413, 94 S.Ct. at 1811. The *Jones* Court did not abandon this principle; indeed, it was careful to observe that the regulations at issue in *Jones* were "drafted no more broadly than they need be to meet the perceived threat." 433 U.S. at 133, 97 S.Ct. at 2542. *See also Gallahan v. Hollyfield,* 670 F.2d at 1346–47.

Virginia vigorously disputes the district court's view that a "good cause" exception, such as § 8.01–217 makes available to probationers, cannot reasonably be denied to inmates. Admittedly, the state's use of

identification records would appear to be much more intensive as regards those who are actually incarcerated than those who are free on probation. Hence the risk of confusion in correctional operations may be somewhat greater when an inmate takes on a new name than when a probationer does so. It does not follow, however, that Virginia may constitutionally withhold legal recognition of an inmate's change of name without regard to the individual interests expressed in the change. The unreasonableness of such a flat ban on name changes by inmates becomes apparent when one considers that many inmates are known by several names at the time they enter prison. In such a case, the correctional authorities apparently record both the inmate's legal name and any known aliases. We see no reason why the reliability and efficiency of correctional records could not be safeguarded by treating an inmate's postincarceration adoption of a religious name in a similar manner: that is, by adding the religious name to the existing records reflecting the inmate's previous legal name and aliases. Indeed, Virginia has conceded that "the latter course would not disrupt the continuity of its records."

■ Virginia's categorical refusal, embodied in § 8.01–217, to accord legal recognition to religious names adopted by incarcerated persons is not "reasonably and substantially justified by considerations of prison discipline and order." *Sweet v. South Carolina Department of Corrections,* 529 F.2d at 863. In this respect, therefore, the statute offends against the free exercise of religion guaranteed by the first amendment.

### III.

■ We think that the district court was in error when, in ruling on the motion for clarification, it required Virginia to reorganize its files according to a prisoner's legally adopted religious name, reflecting that name as his principal appellation and his previous legal name only as an alias. We therefore reverse this aspect of its judgment.

■ Several precedents indicate that the free exercise of religion is satisfied by prospective recognition of a prisoner's adopted Muslim name and does not require revision or reordering of existing files. *See Imam Ali Abdullah Akbar v. Canney,* 634 F.2d 339 (6 Cir. 1980) (per curiam), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981); *Smalley v. Bell,* 484 F.Supp. 16 (W.D.Okl.1979); *Masjid Muhammad—D. C. C. v. Keve,* 479 F.Supp. 1311, 1324 (D.Del.1979); *see also United States v. Duke,* 458 F.Supp. 1188 (S.D.N.Y.1978). This rule conforms to the principle that, in general, the first amendment prohibits certain forms of state action but does not command affirmative acts on the part of the government.

■ Because the first amendment protects an inmate's right to legal recognition of an adopted religious name, correctional authorities may not properly condition the receipt of services or benefits upon his waiving such right. For example, it would be unlawful for Virginia to refuse to deliver mail addressed to a prisoner under his legal religious name. *Keve,* 479 F.Supp. at 1324; *see Canney,* 634 F.2d at 340; *Salahuddin v. Carlson,* 523 F.Supp. 314 (E.D.Va. 1981). In our view, however, the mere fact that correctional authorities maintain a prisoner's records in the name he used when convicted implicates no constitutional right. How prison officials choose to organize their records is quintessentially an administrative matter in which the courts should not intervene.

AFFIRMED IN PART, REVERSED IN PART.