Rabah Muhammad ALI, a/k/a Robert Lee Thacker, Plaintiff–Appellant,

v.

Gary T. DIXON, Gene T. Cousins, Defendants–Appellees.

No. 89–6505.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1990.

Decided Aug. 28, 1990.

Rehearing and Rehearing In Banc Denied Oct. 12, 1990.

Joseph C. Lombard, argued, Student Counsel, Appellate Litigation Program, Georgetown University Law Center, Washington, D.C., (Steven H. Goldblatt, Director, Maureen F. Del Duca, Supervising Atty., Jeffrey E. McFadden, Jo–Anne D. Venneberg, Cindy Lebauer, Student Counsel, Appellate Litigation Program, Georgetown University Law Center, Washington, D.C., on brief), for plaintiff-appellant.

Jacob Leonard Safron, Sp. Deputy Atty. Gen., argued (Lacy H. Thornburg, Atty. Gen., Raleigh, N.C., on brief), for defendants-appellees.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

The district court granted summary judgment for defendant prison officials against the plaintiff, Rabah Muhammad Ali, a Muslim inmate who had alleged that certain prison practices violated his free exercise of religion rights under the first amendment. Ali has appealed.

### I.

Ali converted to Islam after he began serving his sentence at Central Prison in Raleigh, North Carolina. Upon his conversion, Ali adopted his new name as a replacement for Robert Thacker, the name under which he had been committed. His name change is official under North Carolina law. At the time of Ali's conversion, Central Prison had theretofore maintained all of its records pertaining to Ali under his former, committed name. In response to Ali's name change, Central Prison placed the certificate of name change in Ali's official prison file, processed modifications to his visitors list under both his religious and committed names, and added his new name to the prison's mailroom location list.

However, the prison did not add Ali's new name to his official prison jacket. Moreover, Ali has alleged that the absence of his new name from his prison trust fund card requires him to use his former name when collecting trust fund benefits to which he is entitled. Furthermore, the prison uses his former name in corresponding with him. Ali also has alleged that the prison staff refuses to address him by his new name and that he sometimes has not received mail addressed to him under his new name.

Ali, proceeding pro se, filed suit against Warden Gary Dixon and Deputy Warden Gene Cousins, seeking injunctive relief and compensatory damages. Because Ali's complaint lacked specificity, the district court entered two particularization orders. Eventually, Ali's complaint charged that his freedom of religion rights were infringed by a) the prison's refusal to add his new name to its records, b) the prison staff's failure to address him by his new name, c)

his inability to receive certain mail addressed to him under his new name and to see visitors who asked for him by his new name, and d) the refusal of the prison to correspond with him under his new name.

The defendants filed a motion for summary judgment. In support of that motion, the defendants filed their own affidavits, as well as the affidavit of Glenn G. Williams, an official with the North Carolina Department of Corrections. The affidavits detailed the "administrative nightmare" that would result from *substituting* Ali's new name for his old name in official prison records. As to Ali's complaint that the prison staff addresses him by his former name, Dixon's affidavit asserted that although Dixon was not personally aware of how the prison staff addresses Ali, addressing Ali by his committed name would be penologically justified. Dixon referred to the "absolute priority for all correctional staff to ... know as many of the inmates by name as possible," and opined with certainty that "the staff does find it easier to recall the name under which the plaintiff was sentenced, convicted, and committed to the custody of the Department of Correction." As to Ali's alleged failure to receive mail or visitors under his new name, Dixon's affidavit claimed that he was aware of no such incidents. Finally, Dixon's affidavit conceded that the prison corresponds with Ali under his former name because, "if official correspondence generated by correctional staff were addressed to this plaintiff under the name 'Rabah Muhammad Ali', it is quite likely that this material would not be properly inserted into the appropriate file."

The magistrate to whom the case had been assigned informed Ali of the defendants' motion and of the need for him to respond. Ali filed a response and the magistrate recommended judgment for the defendants. The magistrate concluded that Ali's request to have his Muslim name added to his internal prison records failed "to implicate a constitutional right" because the prison's internal record-keeping procedures, standing alone, are left to the prison's discretion. The magistrate recognized that Ali would have a stronger claim if he could show denial of benefits due to failure to add the new name. Nevertheless, the magistrate concluded that Ali's claims regarding the failure to deliver mail and to allow him to receive visitors must fail because Ali had not supported the claims with particularized and verified evidence. As to Ali's complaint that members of the prison staff do not address Ali by his new name, the magistrate found Ali's claim to be unsupported by the evidence. The magistrate additionally concluded, however, that, even if Ali could demonstrate that the prison staff refused to call him by his religious name, incidents of that kind "do not rise to the level of a constitutional violation" because Ali was not forced to acknowledge his committed name of Thacker in order to receive any benefit.

Upon notification of the magistrate's report, Ali filed a motion and an accompanying affidavit in opposition with the district court, alleging the same arguments but adding the allegation that he was being "forced to use his former name to withdraw his prison work pay." The district court subsequently accepted the magistrate's recommendations and entered summary judgment for the defendants. Ali has appealed.[1]

## II.

The Supreme Court has recently summarized the general principles that guide the analysis of a prisoner's claim that a prison policy violates the free exercise clause of the first amendment:

First, convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Second, lawful incarceration brings

---

**1.** On appeal, Ali has abandoned the allegations that he has been denied visitors or the receipt of mail.

about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security.

*O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (citations omitted). In addition, "evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination." *Id.* at 349, 107 S.Ct. at 2404 (citations omitted).

More specifically, the Court has held that "when a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The Court has identified the following four factors to be considered when assessing a regulation's reasonableness:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.... A second factor ... is whether there are alternative means of exercising the right that remain open to prison inmates.... A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally.... Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns.

*Id.* at 89–90, 107 S.Ct. at 2262. Implicit in the *Turner* approach is the principle that the four-factor analysis applies only after it is determined that the policy impinges on a first amendment right. Thus, for each of Ali's claims we must determine whether the prison action impinges on a free exercise right and, if so, whether the prison action is "reasonably related to legitimate penological interests."

With this framework in mind, we now examine each of Ali's claims.

### A

Ali argues that the prison's refusal to *add* his new name to his prison record, as opposed to *substituting* his new name for his old name on his prison record, cannot withstand the *Turner* analysis. Ali contends that the requested a.k.a. addition is an easy alternative to the prison's current policy, indicating that the prison's refusal to accommodate his request is unreasonable. He calls to our attention the fact that the prison has added his new name to certain files, thereby suggesting the addition of his new name is not burdensome. He also points out that his new name does not appear on his prison trust fund account and he alleges that he is forced to use his former name when acquiring the benefits to which he is entitled.

Before proceeding to the *Turner* analysis, we must first determine whether the prison policy impinges on Ali's free exercise rights. In vacating an injunction prohibiting the Secretary of Health and Human Services from making any use of a Native American's social security number on the grounds that the number was religiously offensive, the Supreme Court has observed that such a plaintiff "may no more prevail on his religious objection to the Government's use of a Social Security number for his daughter than he could on a sincere religious objection to the size or color of the Government's filing cabinets. The Free Exercise Clause affords an individual protection from certain forms of governmental compulsion; it does not afford an individual a right to dictate the conduct of the Government's internal procedures." *Bowen v. Roy,* 476 U.S. 693, 700, 106 S.Ct. 2147, 2152, 90 L.Ed.2d 735 (1986). Similarly, we have observed that

"the mere fact that correctional authorities maintain a prisoner's records in the name he used when convicted implicates no constitutional right. How prison officials choose to organize their records is quintessentially an administrative matter in which the courts should not intervene." *Barrett v. Virginia*, 689 F.2d 498, 503 (4th Cir. 1982).

■ Ali, however, claims more than offense at mere absence of his new name from his prison file. He relies upon the allegation that the absence of his name from his trust fund account requires him to use his old, religiously offensive, name when drawing on the funds to which he is entitled. As we have observed, "because the first amendment protects an inmate's right to legal recognition of an adopted religious name, correctional authorities may not properly condition the receipt of services or benefits upon his waiving such a right." *Barrett*, 689 F.2d at 503; *Masjid Muhammad-D.C.C. v. Keve*, 479 F.Supp. 1311, 1326 (D.Del.1979). Thus, to the extent that Ali has been forced to acknowledge his religiously offensive name to receive the trust fund moneys to which he is entitled, and for summary judgment purposes we must assume that he has, the prison's refusal to add his new name to his prison record impinges on his first amendment rights.

Because the prison policy impinges on Ali's free exercise rights, it may be upheld only if it meets the *Turner* standard. In all of the defendants' affidavits, and at oral argument, the defendants have failed to advance any penological, or other, justification for refusing to *add* Ali's new name to his prison file. The defendants' silence on the matter persuades us that, if it is true that the prison conditions the receipt of benefits on Ali's use of his old name, addition (not replacement through use) of Ali's

new name is constitutionally mandated. Both before and after *Turner*, several courts, including our own, have expressed approval of the addition of a prisoner's new name as a means of accommodating the prisoner's free exercise rights and the prison's interests in administrative continuity. *See Barrett*, 689 F.2d at 502; *Salaam v. Lockhart*, 905 F.2d 1168 (8th Cir.1990); *Felix v. Rolan*, 833 F.2d 517, 519 (5th Cir. 1987). The Eighth Circuit has reached a result very similar to our own by holding that an Arkansas state prison "need reform its record keeping only to the extent necessary to allow [an Islamic inmate] to receive services and information in his new name within the prison." *Salaam*, 905 F.2d at 1170.

Therefore, we reverse the district court's grant of summary judgment for the defendants on Ali's objection to the refusal to add his new name to his prison record. On remand, the district court should consider Ali's allegation that he can receive benefits only by using his old name. If the court concludes that Ali's claim is factually correct, it should order addition of Ali's new name to the prison file.[2]

## B

■ Ali also objects to the fact that the prison staff addresses him by his committed name. As with Ali's request for the addition of his new name to his prison record for purposes of receiving trust fund moneys, Ali's request here involves more than mere religious offense at the content of prison files. Instead, Ali's objection relates to the manner in which prison staff interacts with him on a regular basis. Particularly because it is reasonable to presume that Ali will be obligated to respond when addressed under his committed name, the prison's actions impinge on Ali's free

2. At oral argument, counsel for the defendants presented a computer print-out that allegedly indicated that the prison had already added Ali's new name to his prison records. On remand, the defendants will have the opportunity to present the print-out to the district court, which is the proper forum for presentation of such evidence. Also at oral argument, counsel for the defendants informed us that it was "his feeling" that Ali's new name would be honored if Ali were to attempt to withdraw money from his trust fund without reference to his former name. Because counsel would not commit himself on the point, the question of whether Ali's insistence on use of his new name will lead to a denial of benefits also must be decided by the district court.

exercise rights necessitating analysis under the *Turner* standard.[3]

However, unlike with respect to the failure to add Ali's name to his prison record, on this issue the defendants' affidavits do assert valid penological interests supporting the prison's position. As noted above, Warden Dixon claimed in his affidavit that it is important for the staff to know the prisoners by name and that continued use of a prisoner's committed name facilitates the desired familiarity. There are obvious difficulties present if prison staff must memorize a second name after having made the effort to learn the first. Ali has presented no evidence to the contrary. Adding the new name where written is a different kettle of fish than learning two names for one prisoner. Accordingly, giving due deference to the expert opinion of Warden Dixon, which is uncontradicted on the record before us, we find that Ali's claim fails under the *Turner* standard because the regulation is "reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89, 107 S.Ct. at 2261. Therefore, we affirm the summary judgment in favor of the defendants on Ali's objection to the fact that the prison staff address him under his committed name.

### C

 Finally, Ali challenges the prison's refusal to use his new name when it corresponds with him. In his affidavit, Warden Dixon acknowledged that the prison corresponds with Ali under his committed name but explained that correspondence with Ali under his new name would create the risk of improper filing of the correspondence.

For the same reasons that apply to the failure orally to address Ali by his new name, the constant reference to Thacker under his committed name, when interact-

ing with Ali in writing, impinges on his free exercise rights. The prison's failure to use Ali's new name in correspondence must, therefore, be subjected to the *Turner* analysis. Here, however, we find Warden Dixon's defense of prison policy to be insufficient to support summary judgment in the defendants' favor. In particular, it is not clear whether Warden Dixon's comments referred to the implications for proper filing of correspondence of *adding* Ali's new name or of *substituting* Ali's new name. Moreover, there is no testimony as to whether a risk of administrative misfilings would remain if Ali's new name is simply added to his prison record. The commitment name would not be deleted. Although "correctional authorities' assessment of penological and institutional interests are to be received with deference," it remains true that restrictions on prisoners' first amendment rights "are judicially reviewable and that the determination of their reasonableness rests ultimately with the courts." *See Barrett*, 689 F.2d at 502. Accordingly, we reverse the summary judgment for the defendants on the issue of the prison's failure to include Ali's new name in its correspondence with him. On remand, the district court should demand greater specificity from the defendants on their claim of administrative burden and, of course, it should consider, to the extent relevant, its ultimate resolution of Ali's request for addition of his new name to his prison record.[4]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

**3.** We note, for example, that one can reasonably infer from the record that Ali is addressed as Thacker for purposes of prison roll call. Given Ali's claim that his old name represents his former unenlightened self, requiring Ali to recognize an association of his old name with his current self activates the *Turner* analysis.

**4.** Ali has also claimed that there has been inadequate consideration of his pro se status. We

need not consider Ali's claim insofar as it relates to the first and third issues because we have ruled in his favor. As to the second issue, we have affirmed on the assumption that the prison staff does in fact address Ali by his old name. Thus, it is of no moment that Ali may have been given an inadequate opportunity to prove his contention.