972 F.2d 338
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William Thomas BLAND, Plaintiff-Appellant,
and
Linda Kay BLAND, Plaintiff,
v.
Fay LASSITER; Danny Thompson, Defendants-Appellees.
Linda Kay BLAND, Plaintiff-Appellant,
and
William Thomas BLAND, Plaintiff,
v.
Fay LASSITER; Danny Thompson, Defendants-Appellees.
 Nos. 91-6592, 91-6593.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1992
Decided: August 17, 1992
As Amended Oct. 5, 1992.
 
 1
 ARGUED: Amy Jabloner, Student Attorney, Appellate Advocacy Clinic, Washington College of Law, THE AMERICAN UNIVERSITY, Washington, D.C., for Appellants. Sylvia Hargett Thibaut, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for appellees. ON BIREF: Jennifer Lyman, Appellate Advocacy Clinic, Washington College of Law, THE AMERICAN UNIVERSITY, Washington, D.C., for Appellants. Lacy H. Thornburgh, Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.
 
 
 2
 Before HALL and LUTTIG, Circuit Judges, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 KELLAM, Senior District Judge:
 OPINION
 
 3
 William Thomas Bland (husband) and Linda Kay Bland (wife) (nee Sutton), inmates of the North Carolina Department of Corrections, appeal from the District Court's order denying relief under 42 U.S.C. § 1983, challenging the policy utilized by the Department of officially listing all inmates by the name of their original entry into the prison system. Wife earlier had entered the Department of Corrections under the name of Linda Sutton. Prior to her reentry in 1990, she had married William Thomas Bland. After she reentered the system, she was advised that pursuant to departmental policy she would be officially carried on their records as Linda Sutton and she should so notify her family and friends. Plaintiffs objected and asserted the record keeping violated their constitutional rights to marriage and privacy. Following appointment of counsel for plaintiffs and the filing of an amended complaint, defendants filed a motion to dismiss or for summary judgment. Finding no dispute of material fact, and finding that the departmental policy furthers penological interest, is reasonably related to legitimate prison objectives, allows the prison system to maintain effective records and maximize security, and that its purpose in no way relates to nor is intended to infringe upon an inmate's right to marriage, the District Court granted the motion for summary judgment. Our review of the record and the District Court opinion discloses that this appeal is without merit. Plaintiff can access prison services, mail, health care and grievance procedures by the simple use of the name Linda Sutton, now Linda Bland or a/k/a Linda Bland, or Linda Bland, formerly Linda Sutton. The mail room has been alerted to the fact Linda Sutton is a/k/a Linda Bland. Any claim for unreasonable delay or problem in the delivery of mail can thus be corrected. We therefore affirm on the reasoning of the District Court. Bland v. Lassiter, No. CA-90-123-CRT-D (E.D.N.C., April 30, 1991). Following argument in this case, appellant moved the Court for permission to correct the record before the Court by asserting additional facts, the correctness of which appellee challenges. Granting of said motion would not affect the decision and is therefore denied.
 
 AFFIRMED
 
 4
 HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 5
 Linda Kay Bland wishes to be known by her legal (married) name, and her husband wishes to address his letters to her in this name. It is the name under which she was committed to prison on the sentence she is currently serving. We are not confronted with an alias, a name taken for religious reasons but which has not been changed legally, or even a name legally changed after admission to the prison. Yet the majority affirms a district court judgment that sees no injury arising out of an imprisoned woman's total deprivation of mail from her imprisoned husband for five months, a deprivation that is termed a non-compensable "inconvenience" by the district court. As an apparent alternative holding, the district court held"legitimate penological objectives" justified the prison officials' "policy which mandates that all inmates be officially known by the name appearing on their first conviction...." Thus, Mrs. Bland, who had served prior prison sentences (and had, presumably, paid her proverbial debt to society) is destined throughout her current sentence to be known as someone she no longer is or wishes to be.
 
 
 6
 A prison inmate's right to marry is rooted in the Fourteenth Amendment, and the right to receive correspondence is protected by the First Amendment. See Turner v. Safley, 482 U.S. 78 (1987). That Mrs. Bland has a constitutional right to use her married name and to receive mail in that name should be beyond dispute. See Barrett v. Virginia, 689 F.2d 498, 503 (4th Cir. 1982) ("[I]t is unlawful for Virginia to refuse to deliver mail addressed to a prisoner under his legal religious name.") (dicta); Ali v. Dixon, 912 F.2d 86, 90 (4th Cir. 1990) (holding that forcing inmate, who legally changed his name after admission to prison, to request his own trust funds in the name in which he was committed, stated First Amendment claim). Further, unreasonable delay in mail delivery states a cognizable claim. Bolding v. Holshouser, 575 F.2d 461 (4th Cir.), cert. denied, 439 U.S. 837 (1978). Five months is an unreasonably long delay.
 
 
 7
 The penological objective posited by the defendants is the efficient operation of the mailroom. The record does not contain evidence of how many inmates are admitted under legally-changed names different from those under which they served earlier commitments, but I suspect their number is not so high that the mailroom could not readily accommodate the changes. "Legitimate penological objective" does not mean anything that will make life the least bit easier for prison officials. I do not mean to minimize the operational problems of running a prison, particularly in light of the tendency of states to try to run corrections systems on fiscal crumbs. Nevertheless, rights both important and constitutional are involved here, and I fail to see a legitimate countervailing objective on the prison's part. I would reverse the summary judgment on the Blands' First and Fourteenth Amendment claims for damages.
 
 
 8
 I concur in the majority's judgment to the extent that it affirms the district court's judgment dismissing defendants' claims for injunctive relief and the damage claims for alleged violations of plaintiffs' Fifth and Eighth Amendment rights.