Lionell Elijah **EPHRAIM**, Plaintiff,

v.

Ronald J. **ANGELONE**,
et al, Defendants.

No. 01–CV–610.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 3, 2003.

Lionell Elijah Ephraim, Victoria, VA, pro se.

William Wayne Muse, Office of Attorney General of Virginia, Richmond, VA, for Defendants.

### OPINION AND FINAL ORDER

DOUMAR, District Judge.

Plaintiff, Lionell Elijah Ephraim, a Virginia inmate, brings this *pro se* action pur-

suant to 42 U.S.C. § 1983 to redress alleged violations of his constitutional rights. Plaintiff claims that Defendants violated his Fourteenth Amendment right to equal protection of the law and his First Amendment right to freely exercise his religion. Specifically, Plaintiff alleges that he was denied equal protection of the law when Defendants refused his religious dietary request. Plaintiff further alleges that his right to freely exercise his religion has been abridged by the failure of Defendants to provide him with a diet that comports with his religious beliefs and by Defendants' continued use of his former name in correspondence. Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed herein, Defendants' Motion for Summary Judgment is **GRANTED**. Accordingly, this case is hereby **DISMISSED**.

## I. Factual and Procedural Background

Plaintiff is currently in the custody of the Virginia Department of Corrections and is incarcerated at Lunenburg Correctional Center in Victoria, Virginia. Since 1992, Plaintiff has been a "devout Christian of the Charismatic persuasion." Pl.'s Compl. at ¶ 15.

Upon Plaintiff's request, the Circuit Court for the County of Lunenburg entered an order on January 10, 2001, changing Plaintiff's name from Lionell Elizah Williams to Lionell Elijah Ephraim. Pl.'s Compl. at ¶ 16. On February 28, 2001, Plaintiff filed an informal complaint alleging that the commissary was still addressing him by his old name on bags, cart sheets, and receipts. Unsatisfied with the response to his informal complaint, Plaintiff filed a Level I grievance of March 5, 2001. In relevant part, the grievance

states "[c]ommissary's refusal to identify me by my new legal name forces me to respond to and conduct business by a name that is religiously offensive, in order to receive the benefits of the commissary." On March 14, 2001, the Warden responded and stated that he found Plaintiff's complaint to be unfounded. The Warden acknowledged Plaintiff's name change but noted that Plaintiff has not been denied any rights or privileges because of his new name. The Warden's response further stated, "[t]he Commissary operation is computer driven. When your number is entered, your sentenced name will show on their paperwork." Plaintiff appealed this decision by filing a Level II grievance, and it was denied on April 26, 2001. See Pl.'s Verification of Exhausted Admin. Remedies (providing copies of Plaintiff's grievances with their corresponding responses).

While the above complaint was pending, Plaintiff requested that the correctional facility provide him with a vegetarian diet that comports with his religious beliefs. More specifically, Plaintiff stated that his religion required him to refrain from consuming foods containing flesh, white sugar products, or high concentrations of animal fat. Pl.'s Ex. D in Support of Pl.'s Motion for T.R.O. and Preliminary Injunction. Plaintiff maintains that his religion requires him to "undertake a vegetarian diet consisting of (1) raw vegetables, (2) fresh fruit, (3) nuts, (4) honey, (5) whole wheat bread, (6) milk and cheese, and (7) grains." Pl.'s Compl. at ¶ 20. Plaintiff's request for such a diet was denied by Assistant Warden of Programs Graham. Pl.'s Compl. at ¶ 18. Plaintiff filed grievances to Defendants Larsen and Rogers, and these grievances were subsequently denied. Pl.'s Compl. at ¶ 19. See also, Pl.'s Verification of Exhausted Admin. Remedies.

While his grievances were pending, Plaintiff sent a "Notification of Legal and

Religious Premise for Religious Dietary Request" to Defendants. Pl.'s Compl. at ¶ 21. This request was denied on February 14, 2001. *Id.* Plaintiff also sought a transfer to Bland Correctional Center, which has a Common Fare Program. Pl.'s Compl. at ¶ 22. Plaintiff's transfer was initially approved at the institutional level by the Institutional Classification Authority, but it was subsequently denied by the Central Classification Board on the ground that Plaintiff's "stated religious affiliation does not require the diet." *Id. See also,* Pl.'s Verification of Exhausted Admin. Remedies.

On July 18, 2001, Plaintiff filed the present action in the Eastern District of Virginia, Alexandria Division. For the purpose of administrative convenience, this case was then transferred to the Norfolk Division on August 8, 2001. Plaintiff filed a motion for a Temporary Restraining Order and a Preliminary Injunction on September 24, 2001. The Court denied this motion on April 9, 2002, because Plaintiff had failed to adequately demonstrate that ex parte relief should be granted. On May 28, 2002, the Court held that the Virginia Department of Corrections (hereinafter "VDOC") is immune from suit under the Eleventh Amendment. Therefore, the Court ordered that the VDOC be dismissed as a party to this action. Plaintiff appealed this Court's Order dismissing the VDOC to the United States Court of Appeals for the Fourth Circuit. The United States Court of Appeals for the Fourth Circuit denied Plaintiff's appeal on October 1, 2002. Meanwhile, Defendants filed an Answer and a Motion for Summary Judgment with a memorandum in support thereof on August 22, 2002. Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment on September 30, 2002. As required, Plaintiff exhausted his administrative remedies.

On November 14, 2002, the Court ordered Plaintiff to clarify his Fourth Cause of Action, submit exhibits showing correspondence to his old name, and set forth specific facts underlying his claims that he was compelled to respond by his old name in order to receive privileges and that he was compelled to pay his religiously required tithes in his old name. The Court also ordered Defendants to advance a legitimate penological justification for the failure, if any, to include Plaintiff's new legal name in addition to his committed name on any correspondence addressed to Plaintiff.

In response to the Court's Order, Plaintiff submitted a Supplemental Pleading on November 29, 2002. Defendants filed a Supplemental Brief on January 9, 2002. On January 29, 2003, Plaintiff filed a Motion for Enlargement of Time, seeking an additional ten days to reply to Defendants' Supplemental Brief. Plaintiff subsequently filed his reply brief on February 7, 2003. Since Plaintiff submitted his reply within the additional ten days that he had requested, the Court hereby **GRANTS** Plaintiff's Motion for Enlargement of Time. Accordingly, the Court will consider Plaintiff's reply brief.

In light of the foregoing, this matter is now ripe for judicial review.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted where "the pleadings, depositions [and] answers to interrogatories ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court has construed Rule 56(c) to "mandate the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court explained that "[i]n such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, a court views the facts in the light most favorable to the nonmoving party. *United States v. Lee,* 943 F.2d 366, 368 (4th Cir.1991). The moving party has the threshold burden of informing the court of the basis of the motion and of establishing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992). Once the moving party satisfies this threshold showing under Rule 56(c), the burden of production, not persuasion, shifts to the non-moving party. *Id.* at 322–23, 106 S.Ct. 2548. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548; Fed.R.Civ.P. 56(e); *Catawba Indian Tribe,* 978 F.2d at 1339. In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To prevent entry of summary judgment for the movant, the non-moving party must demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### III. Legal Analysis

Plaintiff's complaint alleges that Defendants violated his constitutional rights in two distinct ways: (1) By denying him equal protection of the law under the Fourteenth Amendment and (2) by denying him the right to freely exercise his religion under the First Amendment.

### A. Equal Protection

■ Plaintiff claims that Defendants violated his equal protection rights under the Fourteenth Amendment by refusing to provide him with a vegetarian diet that comports with his religious beliefs. Pl.'s Compl. at ¶ 36. To succeed on an equal protection claim, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional and purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir.2001). Upon this showing by Plaintiff, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Here, Plaintiff has not made the threshold showing of disparate treatment and intentional discrimination. Plaintiff has not shown that he has been treated differently from other similarly situated inmates at Lunenberg Correctional Center. Plaintiff has provided no evidence that other inmates of his religion have made similar dietary requests, much less that such requests have been granted. Moreover, Plaintiff has not provided any evidence that would even suggest purposeful or intentional discrimination. Absent evidence of differential treatment and intentional

discrimination, Plaintiff's equal protection claim cannot survive summary judgment. Accordingly, Defendant's Motion for Summary Judgment should be granted with respect to Plaintiff's equal protection claim.

## B. Free Exercise

In pertinent part, the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. Plaintiff claims that Defendants have denied his right to the free exercise of religion by denying his religious diet request and by failing to use his new legal name.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, inmates do not forfeit all constitutional protections by virtue of their conviction and confinement in prison. *Ali v. Dixon,* 912 F.2d 86, 88 (4th Cir.1990). However,

> [L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security.

*Ali,* 912 F.2d at 88–89 (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987)). Therefore, while inmates retain all of the protections afforded by the Constitution, including the First Amendment and its guarantee of the free exercise of religion, these rights are not absolute. Before proceeding to the merits of Plaintiff's claims, the Court must determine the appropriate standard by which to evaluate Plaintiff's claim that his right to freely exercise his religion has been burdened or denied.

▇ Plaintiff asserts that the Court should utilize the strict scrutiny standard set forth in 42 U.S.C. § 2000cc–1 in evaluating his claims of free exercise violations. Commonly referred to as the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc–1 was enacted on September 22, 2000. It provides:

> (a) General rule. No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling governmental interests; and (2) is the least restrictive means of furthering that compelling governmental interest.
>
> (b) Scope of application. This section applies in any case which-(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc–1 (2002). To date, neither the United States Supreme Court nor the United States Court of Appeals for the Fourth Circuit has ruled on the constitutionality of this statute. A district court in this circuit, however, recently held this statute unconstitutional. *See Madison v. Riter,* 240 F.Supp.2d 566 (W.D.Va.2003) (holding 42 U.S.C. § 2000cc–1 unconstitutional as a violation of the Establishment Clause). Quite simply, the constitutionality of this statute is questionable.

The Court need not further address the question of constitutionality because Plaintiff has not alleged sufficient facts to properly invoke the statute. The statute explicitly requires that substantial burden complained of be imposed in a program or activity that receives federal financial assistance or that the alleged substantial burden affect interstate or foreign commerce. 42 U.S.C. § 2000cc–1(b) (2002). Thus, the general rule set forth in subsection (a) does not become applicable until the threshold of subsection (b) has been met. In this case, Plaintiff has not alleged that the Lunenberg Correctional Center or its dietary programs receive federal financial assistance. Nor has Plaintiff alleged a substantial burden that would affect interstate or foreign commerce. Absent such a showing, Plaintiff cannot invoke the general rule set forth in subsection (a). Accordingly, the Court finds that 42 U.S.C. § 2000cc–1 is not applicable in this case. The Court must now look to precedent in order to ascertain the appropriate standard by which to evaluate Plaintiff's claims that his constitutional right to freely exercise his religion has been abridged.

█ It is well-established that the validity of prison policies depends upon a test of reasonableness, not strict scrutiny. *Washington v. Harper*, 494 U.S. 210, 223, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (stating that the reasonableness standard applies whenever needs of prison administration implicate constitutional rights). Therefore, a prison regulation that burdens an inmate's ability to practice his religion is valid as long as it is "reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349, 107 S.Ct. 2400; *Turner*, 482 U.S. at 89, 107 S.Ct. 2254 (stating that "when a prison regulation impinges on an inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"). Under this test, the Court is required to determine whether a prison policy or regulation burdens the right to the free exercise of religion and, if so, whether the prison policy or regulation is "reasonably related to a legitimate penological interest."

### 1. Use of a Newly Adopted Religious Legal Name

█ When an inmate legally changes his name for religious purposes, the Department of Corrections, upon notice of such a change, is required to add the new name to the prison file. *Ali*, 912 F.2d at 90–91; *Barrett v.Commonwealth of Virginia*, 689 F.2d 498, 503 (4th Cir.1982). However, the Department of Corrections is not required to replace the inmate's old name with the new one. *Id.*

Accordingly, it is the policy of the VDOC to maintain inmate records under the name contained on the inmate's sentencing order. Aff. of Johnson at ¶ 4. VDOC will only change the name on an inmate's file if there is a court order amending the original sentencing order. *Id.* Inmates are allowed to legally change their names. Upon being provided with proper documentation of the legal name change by an inmate, VDOC adds a notation of the legal name change to the official record. *Id.* The new legal name is recorded in the official file as an "A.K.A.," meaning "also known as". *Id.* VDOC does not deny any rights or privileges to inmates who legally changed their name and use a new name. *Id.* Inmates who have legally changed their name are permitted to use their new name to send mail, receive mail, practice religion, access programs, use the law library, access their funds, and use the commissary. *Id.* Both the old and new name can be signed on most required forms and documents. However, there are some official documents that, for identification purposes, require an inmate to sign his committed

name and inmate number in addition to his new name. *Id.*

Plaintiff's first complaint is that his religiously required tithes and offerings are paid using his old name. Pl.'s Supplemental Pleading at ¶¶ 5–8. When Plaintiff desires to pay his tithes and offerings, he is required to complete an institutional withdrawal slip. In his Supplemental Pleading, Plaintiff indicates that he "always signs all of his withdrawal slips using his new name." *Id.* at ¶ 6. Plaintiff then submits his completed withdrawal slip and an addressed, stamped envelope to the business office. "When the business office receives Plaintiff's withdrawal slip, it is processed by cutting a money order for the amount Plaintiff requested and sent to the person and place [that] Plaintiff's stamped envelope indicates." *Id.* at ¶ 7. The money order, however, is issued in Plaintiff's old name. *Id.* at Ex. A (money order receipts issued in Plaintiff's old name). As a result, Plaintiff objects to the fact that his "tithes and offerings are always paid in his old name without any reference to his new name." *Id.* at ¶ 7. Plaintiff further objects to the fact that when the business office issues receipts for money orders, those receipts are in Plaintiff's old name. *Id.* at ¶ 8.

Despite Plaintiff's objections, Plaintiff has not been denied any privileges or benefits when he uses his new legal name. In fact, Plaintiff signs the withdrawal slip with his new name and the business office creates a money order pursuant to Plaintiff's request. While the money order is created in the business office of Lunenburg Correctional Center, "the computer is programmed from the central office with the name under which the inmate was received in the Department of Corrections." Aff. of Carole Wallace at ¶ 6. Consequently, neither the Warden of Lunenburg Correctional Center nor the business office has control over the name in which the money order is issued. *Id.* Since money orders are generated pursuant to a computer programmed through the central office under the name of the inmate at the time of sentencing, the Court finds that requiring a change to include an inmate's new legal name would be unduly burdensome. Therefore, to the extent that Plaintiff challenges VDOC's policy in the context of money orders, Defendants have articulated a legitimate penological justification for why money orders are issued in Plaintiff's old name. On this basis, the Court holds that in the context of money orders, VDOC's policy with regard to legal name changes of inmates is reasonably related to a legitimate penological justification.

Plaintiff's second complaint is that the commissary continues to use his old name on correspondence and that he is required to identify himself by his old name in order to receive his commissary purchases. Pl.'s Compl. at ¶ 29; Pl.'s Supplemental Pleading at ¶¶ 9–11. Plaintiff's assertion that the commissary continues to use only his old name is not supported by the evidence. The commissary records list Plaintiff as "L. Williams Ephraim," and the receipts from Plaintiff's commissary purchases contain Plaintiff's new name as well as his committed name. Aff. of Carole Wallace at ¶ 5; Defs.' Br. in Support of Mot. for Summ. J. at Ex. IIE. In his Supplemental Pleading, Plaintiff asserts that he signs his new legal name whenever he completes a commissary order form. Pl.'s Supplemental Pleading at ¶ 9. There is no evidence that Plaintiff does not receive his commissary orders simply because he placed his order under his new legal name.

Additionally, commissary orders are filled by inmate workers who write the inmate's last name on the commissary bags. Warden Wallace has reminded the commissary supervisor to make sure that

the inmate workers use Plaintiff's new legal name on commissary postings and bags. Aff. of Carole Wallace at ¶ 5. Plaintiff has not provided evidence that any of Defendants acted personally to deprive Plaintiff of his constitutional rights. It is well-established that respondeat superior is not applicable in § 1983 cases. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977); *McDonald v. Dunning*, 760 F.Supp. 1156, 1160 (E.D.Va.1991). Since Plaintiff has not alleged any personal connection between Defendants and the purported denial of his constitutional rights with regard to his commissary purchases, his claim must fail.

Plaintiff's third complaint is that Defendant Spencer and the regional ombudsman correspond with Plaintiff using only his old name. Pl.'s Compl. at ¶ 30; Pl.'s Supplemental Pleading at ¶¶ 12–13. The problem, however, is that Plaintiff has not provided sufficient evidence to withstand summary judgment. While Plaintiff has submitted several exhibits of correspondence addressed solely to his old name, all of these exhibits date back to the early months of 2001. Pl.'s Supplemental Pleading at Exs. E–F. Plaintiff's legal name change did not occur until January 10, 2001. Pl.'s Compl. at ¶ 16. Pursuant to the VDOC policy, Plaintiff had to provide documentation of his legal name change to prison officials. Prison officials then had to make the necessary changes and inform the appropriate personnel of Plaintiff's legal name change. Since the Court does not have information about exactly when prison officials became aware of Plaintiff's legal name change and made the necessary changes, it is reasonable to assume that the process may have taken several months. Plaintiff has not provided any evidence that Defendant Spencer or the regional ombudsman continued to address correspondence to Plaintiff's old name after becoming aware that Plaintiff had legally changed his name. Nor has Plaintiff provided any evidence

that Defendant Spencer or the regional ombudsman corresponded with him using his old name more than several months after his legal name change became effective. Absent such evidence, Plaintiff cannot establish that his First Amendment right to freely exercise his religion has been abridged.

Plaintiff's fourth complaint is that the prison's business only uses Plaintiff's old name on correspondence. Pl.'s Compl. at ¶¶ 31; Pl.'s Supplemental Pleading at ¶ 14. In support of this complaint, Plaintiff has submitted transactions statements from the inmate trust system, receipts for checks paid from his account, a monthly statement of his inmate trust account, and a payroll receipt. Pl.'s Supplemental Pleading at Exs. G–J. All of these documents list Plaintiff's old name and make no reference to his new legal name. *Id.* However, all of these official documents are generated from a program coded with the inmate's name at the time of sentencing. Defs.' Supplemental Br. at ¶ 7. Requiring VDOC to include new legal names in addition to the committed name on official documents would require VDOC to completely overhaul its computer system and its administrative record keeping system. The Court finds that requiring such a change would be unduly burdensome, and therefore, the Court declines to do so. To the extent that Plaintiff challenges VDOC's policy with regard to official documents, Defendants have articulated a legitimate penological justification for why such official documents are issued in Plaintiff's committed name. On this basis, the Court holds that VDOC's failure to add new legal names of inmates to official documents is reasonably related to a legitimate penological justification.

Plaintiff's final complaint is that correspondence addressed to only his old name has caused correctional officers to refer to

Plaintiff by his old name and has compelled Plaintiff to respond to his old name. Pl.'s Compl. at ¶¶ 31 and 32. *See also,* Pl.'s Motion for Rule 56(f) Stay or Denial of Summ. J. at ¶ 11; Pl.'s Supplemental Pleading at ¶ 15. Other than documents dated within several months of Plaintiff's name change and official records such as account information and money order records, Plaintiff has provided no evidence of correspondence addressed only to his old name. Plaintiff has provided no evidence that the VDOC policy with regard to prisoner's legal name changes has not been followed nor has Plaintiff articulated a clear objection to the VDOC policy. Moreover, with regard to Plaintiff's objection that the corrections officers address him by his committed name, the Fourth Circuit has previously held that the use of a prisoner's committed name by prison staff does not violate a prisoner's right to the free exercise of religion under the First Amendment. *Ali,* 912 F.2d at 90–91.

In summary, the Court finds that Plaintiff has not sufficiently alleged a violation of the VDOC's policy regarding legal name changes. To the extent that Plaintiff intended to challenge the VDOC policy with regard to the failure to include an inmate's new legal name on money orders or official documents, the Court holds that the VDOC policy is reasonably related to a legitimate penological interest. On this basis, there is no genuine issue of material fact with regard to Plaintiff's alleged free exercise violation. Accordingly, summary judgment on this claim is warranted.

### 2. Religious Diet Request

■ Plaintiff claims that Defendants abridged his First Amendment right to freely exercise his religion when they denied his religious diet request. Pl.'s Compl. at ¶ 34. Plaintiff asserts that he is a Charismatic Christian and that his religion forbids the consumption of meats, white sugar products, and white bread.

Pl.'s Reply Br. at 2. According to Plaintiff, his religion mandates that his diet consist of raw vegetables, fresh fruit, nuts, honey, whole wheat bread, milk, cheese, and grains. Declaration of Pl. at ¶ 6.

To receive protection from the First Amendment, a plaintiff must show that he sincerely holds his religious beliefs and that his claims are rooted in a religious belief, not in "purely secular" concerns. *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 713–14, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Wisconsin v. Yoder,* 406 U.S. 205, 215–16, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). The Court does not question the sincerity of Plaintiff's beliefs. The problem, however, is that Plaintiff has provided no evidence that his dietary request is rooted in a religious belief. Plaintiff claims that as a Charismatic Christian, he is required to eat only fresh fruit, raw vegetables, whole grains, milk, and cheese. Declaration of Pl. at ¶ 6. Yet Plaintiff has provided no objective evidence of the dietary requirements of Charismatic Christianity. Absent such evidence, Plaintiff has not established that his claims are rooted in a religious belief so as to invoke the protection of the First Amendment.

Even if Plaintiff had made the threshold showing required to invoke the protection of the First Amendment, Plaintiff's claim would still not withstand summary judgment. As previously discussed, limitations on constitutional rights within prisons are subject to a test of reasonableness, not strict scrutiny. *Washington,* 494 U.S. at 210, 110 S.Ct. 1028; *O'Lone,* 482 U.S. at 349, 107 S.Ct. 2400; *Turner,* 482 U.S. at 89, 107 S.Ct. 2254. Upon requesting a religious diet, Plaintiff was informed that VDOC does not recognize the diet that he requested. Defs. Br. in Supp. of Mot. for Summ. J. at ¶ 6. Plaintiff was further advised that meat substitutes are available at

every meal served at Lunenburg and that his dietary request could be "accommodated from the food choices offered on the regular diet line." *Id.;* Aff. of Food Service Director S. Wood at ¶ 7. In his Reply Brief, Plaintiff goes to great length to clarify that his request was for a vegetarian, not a strict vegetarian or vegan diet. Pl.'s Reply Br. at 13–17. However, VDOC is not required to offer special accommodations for vegetarian inmates because these inmates can select the meat substitutes offered on the regular serving line. *See Abernathy v. Cunningham,* 393 F.2d 775, 778 (4th Cir.1968) (finding that if an inmate's religious diet can be accommodated through the choices offered on the regular serving line, a special diet need not be provided). To hold otherwise would be unduly burdensome and costly. As such, the Court finds that VDOC's policy requiring vegetarian inmates to make their food selections from the regular serving line is reasonably related to a legitimate penological justification.

The crux of Plaintiff's complaint seems to be that he is not satisfied with the choices offered on the regular serving line. *See* Pl.'s Declaration at ¶ 14 (stating that "the vegetables served on the prison's regular serving line are depleted of their nutrients through over-cooking; all of the bread served is white bread, the deserts [sic] are predominately white sugar products...."). Such a complaint does not establish a cognizable claim. Accordingly, with regard to Plaintiff's religious diet request, summary judgment is warranted.

### IV. Conclusion

For the aforementioned reasons, the Court finds that Plaintiff's equal protection claim cannot survive summary judgment. The Court further finds that with regard to the use of Plaintiff's new legal name and his religious diet request, Plaintiff has failed to establish that Defendants have abridged his First Amendment right to freely exercise his religion. Accordingly, Defendants' Motion for Summary Judgment is hereby **GRANTED** and this case is **DISMISSED.**

The Clerk of the Court is **DIRECTED** to send a copy of this Order to Plaintiff and all counsel of record.

**IT IS SO ORDERED.**